UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
:
BERNARD GLOVER,                                                    :
:
Plaintiff,                    :
:
-v-                                  :
:
COLLIERS INTERNATIONAL NY, LLC and SERVICE :
EMPLOYEES INTERNATIONAL UNION, LOCAL               :
32BJ,                                                             :
:
Defendants.                   :
:
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _10/24/2014_

13-CV-8843 (JMF)

OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

Plaintiff Bernard Glover sues Defendants Colliers International NY, LLC ("Colliers")

and Service Employees International Union, Local 32BJ (the "Union"), alleging violations of the

Age Discrimination in Employment Act ("ADEA"), Title 29, United States Code, Section 621 *et

seq.*, and the Labor Management Relations Act ("LMRA"), Title 29, United States Code, Section

301. The Union moves to dismiss Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure, and Colliers moves to dismiss or, in the alternative, to compel

arbitration, under Rule 12(b)(6) and Section 3 of the Federal Arbitration Act ("FAA").[1] For the

---

[1]     Colliers's motion is also brought pursuant to Rule 12(b)(1) on the ground that the Court
lacks subject-matter jurisdiction in light of the parties' agreement to arbitrate. To this Court's
knowledge, only one district court in this Circuit has ruled, in a bench opinion, that a mandatory
arbitration clause deprived it of subject-matter jurisdiction, *see State v. Oneida Indian Nation of
New York,* 78 F. Supp. 2d 49, 53 (N.D.N.Y. 1999) (discussing that Court's prior bench opinion),
and no recent case in the Circuit "has held that mandatory arbitration clauses of the type at issue
here deprive courts of subject matter jurisdiction of claims sounding in federal law," *Acevedo v.
Tishman Speyer Properties L.P.*, No. 12-CV-1624 (LTS) (AJP), 2013 WL 1234953, at *2
(S.D.N.Y. Mar. 26, 2013); *see Salzano v. Lace Entm't Inc.*, No. 13-CV-5600 (LGS), 2014 WL
3583195, at *1 (S.D.N.Y. July 18, 2014). Accordingly, the Court will treat the pending motion

reasons that follow, Plaintiff's LMRA claim against the Union and Colliers is DISMISSED, while Plaintiff's ADEA claims against Colliers are stayed pending arbitration.

## BACKGROUND

The following facts, taken from Plaintiff's Amended Complaint and other materials the Court may consider on a motion to dismiss, are considered true for the purposes of these motions. *See, e.g.*, *Karmely v. Wertheimer*, 737 F.3d 197, 199 (2d Cir. 2013); *see also, e.g.*, *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013) (noting that, on a motion to dismiss, a district court may generally consider "only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies"); *Anderson v. Rochester-Genesee Reg'l Transp. Auth.*, 337 F.3d 201, 205 n.4 (2d Cir. 2003) (noting that a court in deciding a motion to dismiss under Rule 12(b)(6) may also consider documents of which it may take judicial notice, including pleadings and prior decisions in related lawsuits).

Colliers is a real estate company that owns and operates an office building at 60 Hudson Street in New York, New York.  (Am. Compl. (Docket No. 11) ¶ 12).  From September 2001 until his termination on October 16, 2012, Plaintiff was employed by Colliers as a security officer at that location and, in that capacity, was a member of the Union.  (*Id.* ¶¶ 10, 14). Colliers is a member of the Realty Advisory Board of Labor Relations, Inc. (the "RAB"), a multi-employer association that engages in collective bargaining with the Union over the conditions of employment of covered employees hired by RAB member employers.  (*Id.* ¶¶ 12-14).  As a member of the Union for the duration of his employment with Colliers, Plaintiff was

---

as a motion to dismiss pursuant to Rule 12(b)(6) or a motion to compel arbitration and to stay the case pending such arbitration under the FAA.  *See Borrero v. Ruppert Hous. Co.*, No. 08-CV-5869 (HB), 2009 WL 1748060, at *2 (S.D.N.Y. June 19, 2009).

bound by a January 1, 2008 Commercial Building Agreement (the "CBA") between the RAB and the Union.  (*Id.* ¶ 16).

To the extent relevant here, the CBA provides that no employee shall be fired without just cause (*id.* Ex. 3 ("CBA"), Art. IV, § 3) and that no employee shall be subject to discrimination on the basis of "race . . . [or] age" (*id*. Art. XIX, § 24).  The CBA further empowers contract arbitrators to "decide all differences arising between the parties as to interpretation, application, or performance of any part" of the CBA, and specifies that arbitration is to be the "sole and exclusive method for the determination of all . . . issues" over which a contract arbitrator has jurisdiction.  (*Id.* Art. VIII, §§ 1, 3).  Although the CBA indicates that "all Union claims are brought by the Union alone and no individual shall have the right to compromise or settle any claim without the written permission of the Union" (*id*. Art. VII, § 4), the RAB and the Union entered into a separate Stipulation of Agreement on December 31, 2011 — which was, in turn, incorporated into the CBA — creating procedures for employees to follow when the Union declines to take an individual employee's discrimination claim to arbitration. (Decl. Carol Goodman Supp. Mot. To Dismiss and in the Alternative To Compel Arbitration (Docket No. 27) ("Goodman Decl.") Ex. 3, Aff. Michael Badowski Supp. Mot. To Dismiss and in the Alternative To Compel Arbitration ("Badowski Aff.") 141-43).  That protocol — initially created as a pilot program in February 2010 — was implemented in direct response to a dispute between the Union and the RAB about whether the CBA enabled employees to pursue arbitration without the Union doing so on their behalf.  (*Id.* at 141).

Colliers fired Plaintiff on October 16, 2012 (Am. Compl. ¶ 21), allegedly for "Poor Performance" and "Failure to Follow Security Standards," among other reasons.  (*Id.*; Aff. Bernard Glover (Docket No. 30) ("Glover Aff.") Ex. 1).  Plaintiff, believing that Colliers had

fired him because of his age and his higher benefits, filed a grievance with the Union on October 25, 2012. (Am. Compl. ¶¶ 22, 25; Glover Aff. Ex. 2). On January 25, 2013, the Union sent Plaintiff a letter stating that, because his case "lack[ed] sufficient merit for the Union to be likely to prevail in arbitration," the Union was declining to arbitrate his complaint. (Am. Compl. ¶ 28; Glover Aff. Ex. 3). Plaintiff appealed the Union's decision to the Union's Grievance Appeal Board; after a hearing on March 25, 2013, the Grievance Appeal Board recommended that the Union not arbitrate Plaintiff's claim. (Am. Compl. ¶ 29; Glover Aff. Ex. 5). The Union sent Plaintiff a letter dated April 8, 2013 indicating that it was adopting the Grievance Appeal Board's recommendation; because of an apparent mailing error, however, Plaintiff did not receive the letter until July 5, 2013. (Glover Aff. Ex. 5; Am. Compl. ¶ 32; Pl.'s Mem. Law Opp'n Defs.' Colliers Int'l, NY, LLC's & Serv. Emp. Int'l Union, Local 32BJ's Mot. Tto Dismiss Am. Compl. or in the Alternative To Compel Arbitration Pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. 29) ("Pl.'s Mem.") 11).

While Plaintiff was pursuing his grievance with the Union, he also commenced a lawsuit in this Court against Colliers and Steve Madson, Colliers's director of security, on November 26, 2012. (Am. Compl. ¶ 4; Decl. Gregory G. Smith Opp'n Defs.' Mot. To Dismiss Am. Compl. (Docket No. 31) ("Smith Decl.") Ex. H ¶¶ 7, 8). On February 19, 2013, after the defendants in that action filed a motion to dismiss, Plaintiff voluntarily withdrew his complaint in order to pursue his claims through arbitration. (Am Compl. ¶ 6; Smith Decl. Ex. I). On December 3, 2013, however, Plaintiff filed another complaint under the same docket number, asserting claims of discrimination, retaliation, and hostile work employment against Colliers and Madson. (*Id.* Ex. J ¶¶ 1, 12-13). The Honorable George B. Daniels, to whom the earlier case was assigned, rejected Plaintiff's complaint as improperly filed. (*Id.* Ex. K). Shortly thereafter, Plaintiff

initiated the present case by filing a new complaint reasserting the claims set forth in his

December 3rd complaint.  (*Id.* Ex. L).  After Colliers and Madson filed a motion to dismiss,

Plaintiff was given an opportunity to amend his complaint pursuant to Rule 15(a)(1)(B) of the

Federal Rules of Civil Procedure.  (Docket Nos. 6, 10).  Plaintiff took that opportunity, and on

March 13, 2014, Plaintiff filed the Amended Complaint, naming the Union as a Defendant for

the first time (and dropping Madson).  In it, Plaintiff alleges that Colliers engaged in a pervasive

pattern of discrimination based on his age, ending with his unlawful termination, and that the

Union breached its duty of fair representation by failing to pursue his grievance on his behalf.

(Am. Compl. ¶¶ 79, 83, 91, 94).

## DISCUSSION

### A.       The LMRA Claim

Colliers and the Union move to dismiss Plaintiff's claim under the LMRA — a "hybrid"

breach-of-contract/fair representation claim under Section 301, *see Domnister v. Exclusive*

*Ambulette, Inc.*, 607 F.3d 84, 86 (2d Cir. 2010) — on the ground that it is time barred.  (Def.

Serv. Emp. Int'l Union Local 32BJ's Mem. Law Supp. Mot. To Dismiss Am. Compl. Pursuant

Fed. R. Civ. P. 12(b)(6) (Docket No. 17) ("Union's Mem.") 2; Mem. Law Supp. Def. Colliers

Int'l NY, LLC's Mot. To Dismiss Am. Compl. and in the Alternative To Compel Arbitration

(Docket No. 28) ("Colliers' Mem.") 19-23).  Although a statute of limitations is generally raised

as an affirmative defense, "[where] the dates in a complaint show that an action is barred by a

statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to

dismiss."  *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989).  A "hybrid"

breach-of-contract/fair representation claim under Section 301 of the LMRA is subject to a six-

month statute of limitations.  *See, e.g.*, *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169

(1983); *accord Carrion v. Enter. Ass'n, Metal Trades Branch Local Union 638*, 227 F.3d 29, 33 (2d Cir. 2000). Such a claim "accrues no later than the time when the union members knew or reasonably should have known" that a union has breached its duty of fair representation. *Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers*, 378 F.3d 269, 278 (2d Cir. 2004); *see Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1492 (2d Cir. 1995). The date upon which a plaintiff reasonably should have known of a union's breach "is not necessarily the date that the employee is notified of a final adverse determination with respect to a grievance." *Demchik v. Gen. Motors Corp.*, 821 F.2d 102, 105 (2d Cir. 1987).

Applying those standards here, Plaintiff's LMRA is plainly time barred. Viewing the facts in the light most favorable to Plaintiff, the LMRA claim accrued no later than March 25, 2013, when Plaintiff was told, in no uncertain terms, that the Union did not intend to arbitrate — or, indeed, even further investigate — his claim. (Am. Compl. ¶¶ 29). In fact, Plaintiff was told on that date that "he would have to go to another place" and that his claim "was out of [the Union's] jurisdiction as far as [his] being compensated due to [his] foul treatment and discrimination." (*Id.*). At that point, Plaintiff unquestionably "knew or reasonably should have known" of a potential breach of fair representation claim — yet Plaintiff did not raise such a claim for almost a year thereafter. *See, e.g.*, *Buttry*, 68 F.3d at 1492 (holding that the plaintiffs' unfair representation claim accrued when union representatives informed them at a meeting that "they would do absolutely nothing for the plaintiffs, and never in fact changed that position"); *Austin v. Gen. Motors Corp.*, No. 94-CV-832A, 1995 WL 866220, at *8 (W.D.N.Y. Dec. 1, 1995) (holding that the plaintiff's cause of action accrued "when plaintiffs were informed by their local union representatives that they did not have a grievable complaint."). As Plaintiff does not even attempt to argue that there were "exceptional circumstances" warranting a toll of

the six-month statute of limitations, *see Arnold v. 1199 SEIU*, No. 09-CV-5576 (DLC), 2009 WL

4823906, at *5 (S.D.N.Y. Dec. 15, 2009), *aff'd*, 420 F. App'x 48 (2d Cir. 2011), his unfair

representation claim must be and is dismissed as untimely.[2]

## B.      The ADEA Claims

Plaintiff's remaining claims are brought under the ADEA solely against Colliers.[3]

Colliers argues that they are subject to mandatory arbitration and moves to dismiss on that basis

or, in the alternative, to compel arbitration and stay this case pending such arbitration.  (*See*

Colliers' Mem. 11, 15).  The FAA mandates that a written agreement to arbitrate "shall be valid,

irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

revocation of any contract."  9 U.S.C. § 2; *see also, e.g.*, *Ragone v. Atl. Video at Manhattan Ctr.*,

595 F.3d 115, 121 (2d Cir. 2010) (stating that the FAA represents a "strong federal policy

favoring arbitration as an alternative means of dispute resolution").  As the Supreme Court has

held, "nothing in the text, legislative history, or underlying purposes of the ADEA indicat[es] a

congressional intent to preclude enforcement of arbitration agreements" with respect to such

---

[2]      Even if, as Plaintiff argues (Pl.'s Mem. 11), the LMRA claim accrued on July 5, 2013,
when Plaintiff received final written notice from the Union, the claim would still be time barred.
Rule 15(c) of the Federal Rules of Civil Procedure specifies that an amended pleading naming a
new party "relates back" to an earlier pleading only if the new party "knew or should have
known that the action would be brought against it, but for a mistake concerning the proper
party's identity."  Fed. R. Civ. P. 15(c)(1)(C)(ii).  Applying that standard here, Plaintiff's
Amended Complaint does not relate back to his original complaint, filed on December 13, 2012,
as nothing in that original complaint put the Union on notice that Plaintiff might bring the
LMRA claim against it.  That is, the original complaint "was the result of a fully informed
decision as opposed to a mistake concerning the proper defendant's identity."  *Krupski v. Costa
Crociere S. p. A.*, 560 U.S. 538, 552 (2010).  Accordingly, the relevant date for assessing the
statute of limitations is March 13, 2014 — more than eight months after July 5, 2013.

[3]      The Amended Complaint refers to "Defendants" in alleging violations of the ADEA
(Am. Compl. ¶¶ 84-86, 91-92, 94-96), but Plaintiff clarified in his opposing memorandum that
his only claim against the Union is under Section 301 of the LMRA.  (Pl.'s Mem. 4).

claims. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (internal quotation marks omitted). Further, in *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009), the Court concluded that "a collective bargaining agreement that clearly and unmistakably requires union members to arbitrate ADEA claims is enforceable as a matter of law." *Id.* at 260.

In light of the Supreme Court's decision in *Pyett*, not to mention the many subsequent holdings by other district courts in this Circuit, it is clear — indeed, crystal clear — that Plaintiff is obligated to pursue his ADEA claims through the procedures set forth in the CBA (and the Stipulation of Agreement incorporated therein). Many courts in this Circuit have found that the precise CBA and Stipulation of Agreement at issue here "clearly and unmistakably" require parties raising discrimination claims to submit to mediation and arbitration. *See, e.g.*, *Germosen v. ABM Indus. Corp.*, No. 13-CV-1978 (ER), 2014 WL 4211347, at *5-6 (S.D.N.Y. Aug. 26, 2014) (holding that the plaintiff's ADA, Title VII, and state law claims are subject to mandatory arbitration pursuant to the terms of the CBA); *Bouras v. Good Hope Mgmt. Corp.*, No. 11-CV-8708 (WHP), 2012 WL 3055864, at *4 (S.D.N.Y. July 24, 2012) (concluding that the language of the CBA "clearly and unmistakably requires arbitration" of the plaintiff's discrimination claim); *Duraku v. Tishman Speyer Properties, Inc.*, 714 F. Supp. 2d 470, 474 (S.D.N.Y. 2010) (finding that the CBA and a February 2010 agreement between the Union and the RAB — which later became the Stipulation of Agreement — "expressly require the resolution of plaintiffs' statutory claims through mediation and/or arbitration").

Plaintiff's arguments to the contrary are unavailing. Plaintiff first argues that the mandatory arbitration clauses in the CBA and in the Stipulation of Agreement are unenforceable because Plaintiff was effectively "blocked" by the Union from pursuing his rights via arbitration when it declined to arbitrate Plaintiff's claim on his behalf. (Pl.'s Mem. 20). Although *Pyett* did

8

leave open the possibility that an arbitration clause could be deemed unenforceable if it prevents plaintiffs from "effectively vindicating their federal statutory rights in the arbitral forum," 556 U.S. at 273-74 (internal quotation marks omitted), that potential escape hatch has no application here because the Stipulation of Agreement expressly provides — indeed, mandates — procedures for mediation and arbitration when the Union declines to pursue a claim on an employee's behalf.  (*See* Bakowski Aff. at 141-44).  *See also Bouras*, 2012 WL 3055864, at *4 (holding that the CBA "does not prevent or impede [the plaintiff] from arbitrating his claim in the absence of Union participation . . . .  This reading of the CBA is consistent with the Union's and the RAB's apparent understanding of the agreement.  Following *Pyett*, the RAB and the Union entered into a supplemental agreement establishing procedures that employees must follow to arbitrate claims that the Union declines to arbitrate on their behalf.").[4]

The final straw at which Plaintiff attempts to grasp is that he should not be compelled to mediate and arbitrate his claims because "he cannot afford [its] exorbitant expense."  (Pl.'s Mem 18).  A party seeking to invalidate an arbitration clause based on costs, however, bears the burden of establishing the clause's invalidity by a preponderance of the evidence, meaning that the plaintiff must affirmatively prove that there is a likelihood of incurring impermissibly high costs through arbitration.  *See, e.g.*, *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79,

---

[4]     Despite that clear language, Plaintiff argues that he was precluded from pursuing his rights through arbitration because the Union did not expressly make him aware of the procedures set forth in the Stipulation of Agreement in declining to arbitrate his claim on his behalf.  (Pl.'s Mem. 17).  Whatever the validity of that argument in the abstract, it has no traction here as Plaintiff was represented by counsel in his related lawsuit in early 2013.  *Cf. Wozniak v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. — UAW, Local 897*, 842 F.2d 633, 636 (2d Cir. 1988) (holding that the plaintiff was not excused for failing to exhaust his internal union administrative remedies, as he "did not show that the Union unfairly misled him concerning the proper procedures for pursuing his Union remedies" and he "was represented by an attorney who had the necessary training to read and understand the Union Constitution.").

91-92 (2000).  Here, quite simply, Plaintiff does not even come close to meeting that burden.

Plaintiff insists that he and those in his position have "no method of gauging how much the

arbitration will cost," and hence may be unlikely to pursue their rights through arbitration.  (Pl.'s

Mem. 19).  But the Supreme Court has held that precisely that type of conclusory statement,

when accompanied by an arbitration clause's silence on the cost of the process, is insufficient to

invalidate an arbitration clause.  *See Green Tree Fin. Corp.*, 531 U.S. at 92 ("The record reveals

only the arbitration agreement's silence on the subject, and that fact alone is plainly insufficient

to render it unenforceable.  The 'risk' that Randolph will be saddled with prohibitive costs is too

speculative to justify the invalidation of an arbitration agreement.").

Having concluded that all of Plaintiff's remaining claims are subject to mandatory

arbitration, the Court must decide whether to dismiss or stay this action pending arbitration.

Although Section 3 of the FAA requires a district court to stay proceedings where an issue before

it requires arbitration, *see* 9 U.S.C. § 3, a court has discretion to dismiss, rather than stay, an

action when all of the issues in it must be arbitrated, *Salim Oleochemicals v. M/V Shropshire*,

278 F.3d 90, 92-93 (2d Cir. 2002), because "no useful purpose will be served by granting a stay

of [the] proceedings," *Germosen*, 2014 WL 4211347, at *7 (internal quotation marks omitted).

In evaluating whether to dismiss or grant a stay, however, the Second Circuit has urged district

courts to be mindful of the fact that a dismissal is appealable whereas a granting of a stay is not,

and "[u]nnecessary delay of the arbitral process through appellate review is disfavored." *Salim

Oleochemicals*, 278 F.3d at 93.  Thus, the Court will stay the proceedings pending arbitration of

Plaintiff's ADEA claims.  *See Duraku,* 714 F. Supp. 2d at 475 (staying rather than dismissing the

plaintiff's discrimination claims pending arbitration in order to "promote expeditious resolution"

of the dispute).

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss Plaintiff's LMRA claim is GRANTED, and Collier's motion to compel arbitration of Plaintiff's remaining claims and to stay this case pending such arbitration is GRANTED.

The Clerk of Court is directed to (1) terminate Docket Nos. 16 and 26; (2) terminate Service Employees International Union, Local 32BJ as a party; and (3) administratively close this case without prejudice to either party seeking to reopen it within thirty days of the conclusion of any arbitration proceedings.

SO ORDERED.

Date:   October 24, 2014
        New York, New York

_____
JESSE M. FURMAN
United States District Judge